NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HORTENSE GRANT-BULLENS, | Civil Action No.: 09-5363 (JLL) |
| Plaintiff, | OPINION |
| v. | |
| NEW JERSEY BUILDING LABORERS STATEWIDE ANNUITY FUND, et al., | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion for summary judgment filed by Defendants on January 3, 2011 and a cross motion for summary judgment filed by Plaintiff on January 24, 2011. The Court has considered the submissions in support of and in opposition to the present motions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

I.      BACKGROUND

The facts set forth herein are undisputed unless otherwise noted. Defendant New Jersey Building Laborers Statewide Annuity Fund ("the Fund") is a multi-employer defined contribution employee pension benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendant Zenith Administrators ("Zenith") is responsible for the daily administration of the Fund's plan of benefits, including review of any qualified domestic relations order ("QDRO") applicable to the Fund. The Fund's Board of Trustees, also a

defendant to this action, has "the sole power and authority to construe and interpret the plan (or other applicable documents)." (Defs.' Stmt. of Undisputed Material Facts ¶ 8.) The Fund maintains a claims and appeals procedure by which a benefit claimant can challenge a denial of a benefit request and appeal such decisions to the Fund's Board of Trustees.

Plaintiff Hortense Grant-Bullens is a participant in the Fund. On June 15, 2007, she divorced Rowan Bullens, and a Final Judgment of Divorce was executed and filed in the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County. The judgment provided for a "50/50" division of the annuity held by Grant-Bullens as a Fund participant. On March 20, 2008, counsel for Grant-Bullens provided a proposed QDRO to the Fund and subsequently submitted two revisions to clarify provisions regarding the amount to be distributed to Rowan Bullens as the "alternate payee." On June 13, 2008, the Superior Court of New Jersey executed the order drafted by the parties, and on June 26, 2008 the Fund notified Grant-Bullens that the order was qualified under ERISA. Grant-Bullens does not dispute the Fund's determination.

On July 15, 2008, Zenith mailed a check to Rowan Bullens in the amount of $35,962.21. On August 4, Grant-Bullens learned of the distribution and called the Fund's general manager, Mary Castrovinci, to inform her that she believed that Zenith had overpaid Rowan Bullens. When Ms. Castrovinci failed to provide satisfaction, counsel for Grant-Bullens called Zenith's account manager for the Fund, Joanne Lye-McKay, and Ms. Lye-McKay suggested that counsel write a letter expressing his concerns. In a letter dated August 5, 2008, counsel for Grant-Bullens stated his belief that Zenith had overpaid Rowan Bullens, indicated the amount that he believed to be correct, and requested that Grant-Bullens's account be credited accordingly. The Fund

replied by letter dated August 25, 2008, stating that the Fund had not erred in its calculation of Rowan Bullens's benefit. Two days later, counsel for Grant-Bullens responded by letter repeating his contention that the Fund or Zenith erred in its calculation and repeating his request that his client's account be credited. In a letter dated August 29, 2008, the Fund again responded, stating its disagreement with Grant-Bullens's interpretation of the QDRO.

On September 11, 2009, Grant-Bullens filed this action in the Superior Court of New Jersey seeking recovery of the alleged overpayment of benefits, and on October 20, 2009, the action was removed to this Court. At no time prior to the filing of this action did Grant-Bullens appeal her claim to the Fund's Board of Trustees. She testified at her deposition that she was aware that Ms. Castrovinci reported to the Board of Trustees but stated that she failed to appeal to that body because she "didn't think it would get nowhere," in light of Zenith and the Fund's refusal to credit her account. (Id. at 63.) She further testified that she was in possession of the Fund's summary plan description, which sets forth the procedure for appealing claims decisions.

## II. LEGAL STANDARD

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a

genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

### III. DISCUSSION

Defendants' principal argument in support of their motion for summary judgment is that Grant-Bullens failed to properly exhaust her administrative remedies before filing the instant action. Grant-Bullens counters that exhaustion was not required, arguing that this case concerns the Fund's failure to interpret the language of the QDRO and not the recovery of a benefit due.

#### A. Applicability of the Exhaustion Requirement

Section 502(a)(1)(B) of ERISA allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Before bringing a civil action under § 502(a)(1)(B), a plaintiff must first exhaust the remedies available under the Plan. Harrow v. Prudential Ins. Co. of America, 279 F.3d 244, 249 (3d Cir. 2002). The exhaustion requirement defers to administrative expertise,

> ensures that the appeals procedures mandated by Congress will be employed, permits officials of benefit plans to meet the responsibilities properly entrusted to them, encourages the consistent treatment of claims for benefits, minimizes the costs and delays of claim settlement in a nonadversarial setting, and creates a record of the plan's

rationales for denial of the claim.

Zipf v. American Tel. and Tel. Co., 799 F.2d 889, 892–93 (3d Cir. 1986).  The exhaustion requirement, however, does not apply to substantive statutory violations, such as discrimination claims under § 510, claims for failure to provide summary plan descriptions, and breach of fiduciary duty claims under §§ 404–406, as such violations do not implicate the policies behind the exhaustion requirement.  Harrow, 279 F.3d at 253.  But, a plaintiff "cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims."  Id.  A claim pled under breach of fiduciary duty is nonetheless "actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA."  Id. (quoting Smith v. Sydnor, 184 F.3d 356, 362 (4th Cir. 1999)).  A plan administrator who enforces a QDRO effectively enforces a plan document.  Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan, 129 S.Ct. 865, 876 (2009).

      Here Grant-Bullens does not dispute that she failed to appeal her claim to the Board of Trustees.  She also does not deny that she possessed the relevant plan documents, which outlined the Fund's appeals process.  Grant-Bullens instead contends that as a matter of law her claim before this Court is not a claim for benefits and that she was thus not required to exhaust her administrative remedies.  She explains that she "was not denied a benefit claim, but that the Third Party Administrator, Zenith, failed to properly interpret the language of the QDRO."  (Pl.'s Br. at 4.)  Grant-Bullens, however, does not point to a single ERISA provision that Zenith's actions allegedly violated, nor does she offer a more general allegation sounding in breach of fiduciary duty, discrimination, or other statutory violation for which exhaustion might be

excused.  Based on her submissions to this Court, Grant-Bullens's allegations can most fairly be characterized as a claim that Defendants erred in their interpretation of the QDRO and, as a result, improperly distributed funds from Grant-Bullens's account.  As this claim turns upon the language of the QDRO, it "rests upon an interpretation and application" of an effective plan document, rather than upon an interpretation and application of ERISA itself, and is thus a claim for benefits.[1]  Just as with original plan documents, administrative review of Zenith's interpretation of the QDRO would take full advantage of the Plan's expertise in such matters and would create a more complete record of the rationales for its decision.  The Court thus concludes that Grant-Bullens was required to exhaust her administrative remedies before bringing the instant action.

**B.    Futility of Exhaustion**

A court may excuse the exhaustion requirement if the plaintiff provides a "clear and positive showing" that exhaustion is futile.  Harrow, 279 F.3d at 249 (quoting Brown v. Cont'l Baking Co., 891 F. Supp. 238, 241 (E.D. Pa. 1995)).  Here, Grant-Bullens has provided the Court with no evidence from which it could find a clear showing of futility, but instead simply requests that the Court "examine the underlying facts" and apply its discretionary authority.  (Pl.'s Br. at 4.)  Such a request plainly fails to satisfy Plaintiff's burden of production on this matter, and the Court's own examination of the record reveals no evidence from which it could conclude that an appeal to the Board of Trustees would have been futile or that Grant-Bullens was otherwise

---

[1]The fact that Grant-Bullens made no formal claim for benefits does not change this analysis, as a claim for benefits accrues upon the plan's clear repudiation of such benefits; no formal application is required.  See Romero v. Allstate Corp., 404 F.3d 212, 222–23 (3d Cir. 2005).

denied access to the Fund's appeals process. Grant-Bullens's conclusory statement that she "didn't think [an appeal to the Board of Trustees] would get nowhere," amounts to nothing more than a "bare allegation of futility," which is insufficient to excuse the exhaustion requirement. Menendez v. United Food & Commercial Workers Local 450T, AFL-CIO, No. 05-1165, 2005 WL 1925787, *1–2 (D.N.J. Aug. 11, 2005). Grant-Bullens's failure to exhaust the administrative remedies maintained by the Fund is therefore not excused.

### IV.   CONCLUSION

For the foregoing reasons, the Court concludes that summary judgment should be entered in favor of Defendants. Defendants' motion, however, will be granted without prejudice to Plaintiff's right to refile following exhaustion of her administrative remedies. See D'Amico v. CBS Corp., 297 F.3d 287, 293–94 (3d Cir. 2002). An appropriate Order accompanies this Opinion.


DATED: February 8, 2011                /s/ Jose L. Linares
                                       JOSE L. LINARES
                                       UNITED STATES DISTRICT JUDGE